**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GENEVIEVE MORGAN,**

                     **Plaintiff,**

                     **v.**

**VIRGIN ATLANTIC AIRWAYS**
**et al.,**

                     **Defendants.**
_____

**1:14-cv-819**
**(GLS/CFH)**

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Genevieve Morgan
Pro Se
10 Sage Drive
Queensbury, NY 12804

**FOR THE DEFENDANTS:**
Virgin Atlantic Airways
Clyde & Co. US LLP                CHRISTOPHER CARLSEN, ESQ.
405 Lexington Avenue, 16th Floor    NICHOLAS L. MAGALI, ESQ.
New York, NY 10174

Emma Thomas                    NO APPEARANCE

**Gary L. Sharpe**
**District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Genevieve Morgan commenced this action against

defendants Virgin Atlantic Airways (VAA) and Emma Thomas pursuant to 42 U.S.C. § 1983. (Compl., Dkt. No. 1.) Liberally construed, Morgan alleges defendants violated the Air Carrier Access Act (ACAA),[1] the Americans with Disabilities Act of 1990 (ADA),[2] and her Fourteenth Amendment right to travel. (*Id.*) Pending is VAA's motion for summary judgment. (Dkt. No. 17.) For the reasons that follow, the motion is granted.

## II. Background

### A. Facts[3]

In January 2013, Morgan flew aboard a VAA flight from Miami International Airport to Murtala Muhammed International Airport in Lagos, Nigeria with a layover at Heathrow Airport in London. (Compl. at 3; Dkt. No. 20 at 7, 12-13.) She scheduled a return trip from Lagos to New York, with a layover in London, for February 15, 2013. (Compl. at 3; Dkt. No. 20 at 7.) VAA personnel did not allow Morgan to board the plane in Lagos for her return trip. (Def.'s Statement of Material Facts (SMF) ¶ 5, Dkt. No. 17,

---

[1] *See* 49 U.S.C. § 41705.

[2] *See* 42 U.S.C. §§ 12101-12213.

[3] The facts are undisputed unless otherwise noted.

2

Attach. 2.) According to VAA, Morgan did not have valid documents to travel into the United Kingdom. (Dkt. No. 20 at 23.) To avoid the travel restriction, VAA apparently arranged for Morgan to travel directly to the United States on a sister airline. (*Id.* at 24.) According to Morgan, Nigerian immigration officials assisted her with procuring transportation back to the United States, but also contributed to her embarrassment of being barred from the VAA flight. (Pl's SMF ¶ 6, Dkt. No. 20 at 1-3.)

Morgan later contacted customer relations to complain about the incident, and Thomas, a customer relations executive at VAA, responded by email. (Dkt. No. 20 at 23-24.) Thomas informed Morgan that VAA was concerned that she felt VAA was "malicious and discriminative" towards her. (*Id.* at 23.) Thomas explained that Morgan could not travel through the United Kingdom with her Jamaican passport and United States resident card issued in 1979. (*Id.*) Thomas stated that VAA personnel had contacted a liaison officer from the British Deputy High Commission to see if accommodations for Morgan could be made. (*Id.*) Thomas explained that Morgan would have had to obtain a transit visa from the British Embassy, which would take less than two days. (*Id.* at 24.) Thomas understood from speaking with VAA personnel that Morgan "had an

3

extremely important meeting at the White House" and that is why VAA made alternative travel arrangements.  (*Id.*)  Thomas also remarked that: "[i]t's disappointing that you feel you need to seek legal advice[, but] . . . it is of course your prerogative to do so and [VAA] will comply in any way [it] can."  (*Id.*)

On July 8, 2014, Morgan commenced this action against VAA and Thomas by filing a form complaint.  (Compl.)  Morgan alleges that she was discriminated against because of her disability and that her "freedom to travel has been severaly [sic] haltered."  (*Id.* at 2 .)  A review of the docket sheet reveals that Morgan has served VAA but not Thomas.  (Dkt. No. 7.)  VAA answered, denied the allegations, and asserted numerous affirmative defenses.  (Dkt. No. 9.)  After some discovery, VAA filed its now pending motion for summary judgment.  (Dkt. No. 17.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Section 1983

Regardless of the underlying constitutional or statutory violation that Morgan alleges, VAA argues that it is entitled to summary judgment because it is not a government actor nor was its conduct fairly attributable to state action. (Dkt. No. 17, Attach. 1 at 3-5.) Morgan does not directly respond to this argument. (Dkt. No. 20 at 4-7.) The court agrees that any alleged constitutional or statutory violation that Morgan advances as a section 1983 claim must fail for lack of state action.

State action is a threshold requirement in a section 1983 case. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014). Conduct by private parties will constitute state action if the alleged violation is "'fairly attributable to the [s]tate.'" *Id.* at 264 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). This requires that there "'be such a close nexus between the [s]tate and the challenged action' that the state is 'responsible for the specific conduct of which plaintiff complains.'" *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003)). Conduct by private entities will amount to state action under

section 1983:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state (the compulsion test); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state or the entity's functions are entwined with state policies (the joint action test or close nexus test); or (3) when the entity has been delegated a public function by the state, (the public function test).

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (internal quotation marks and citation omitted).

Here, VAA is a private entity incorporated under the laws of England. *See Jenkins v. Virgin Atlantic Airways, Ltd.*, 46 F. Supp. 2d 271, 274 (S.D.N.Y. 1999). Even liberally construed, Morgan does not allege or establish VAA's state action. The conduct she challenges relates only to alleged discrimination and infringement of her right to travel by VAA, its employees, and, potentially, Nigerian immigration officials. (Compl. at 3.) Morgan does not demonstrate that VAA's conduct was compelled by the state, entwined with the state, or that VAA was delegated a public function by the state. *See Sybalski*, 546 F.3d at 257. Because VAA is not a state actor nor engaged in state action, VAA is granted summary judgment on

Morgan's section 1983 claims.[4]

B. **ACAA & ADA Claims**

VAA assumes that Morgan only raises section 1983 claims. (Dkt. No. 17, Attach. 1 at 3-5.) The court, as it must, reads Morgan's *pro se* complaint more broadly. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013). Morgan also appears to allege violations of the ACAA and the ADA independent of her section 1983 claims. (Compl. at 3.) Morgan asserts that VAA discriminated against her on the basis of her unidentified disability when it prohibited her from boarding her departing flight from Nigeria to London. (Dkt. No. 20 at 5.)

Under the ACAA, an air carrier is prohibited from discriminating against "an otherwise qualified individual" who "has a physical or mental impairment that substantially limits one or more major life activities." 49 U.S.C. § 41705(a)(1). The ACAA does not explicitly provide for a private right of action, and the Second Circuit has declined to imply one. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011). Rather,

---

[4] To the extent that Morgan may allege claims based on federal action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), VAA is also granted summary judgment on those claims as VAA is a private entity and not amenable to a *Bivens* suit. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001).

7

*Lopez* analyzed the statute's legislative intent and determined that its "administrative enforcement scheme [was] designed to vindicate fully the rights of disabled passengers." *Id.* Thus, there is no cognizable action under the ACAA.

Morgan's complaint conceivably alleges disability discrimination under the ADA on two theories. An individual cannot be "discriminated against on the basis of disability in the full and equal enjoyment" of "specified public transportation services," 42 U.S.C. § 12184, or "public accommodations," *Id.* § 12182. The ADA defines "specified public transportation" as "transportation by bus, rail, or any other conveyance *(other than by aircraft)* that provides the general public with general or special service (including charter service) on a regular and continuing basis." *Id.* § 12181(10) (emphasis added). Here, Morgan alleges disability discrimination because VAA prohibited her from flying on its aircraft. Because the ADA excludes transportation by aircraft from the definition of "specified public transportation," there can be no liability under this theory. *See Lopez*, 662 F.3d at 598.

The ADA enumerates twelve categories of "private entities" that are places of "public accommodation." 42 U.S.C. § 12181(7)(A)-(L); *see*

8

*Lopez*, 662 F.3d at 599. As in *Lopez*, "[t]he only 'public accommodation' category that is arguably relevant to this case is 'a terminal, depot, or other station used for specified public transportation.'" *Lopez*, 662 F.3d at 599 (quoting 42 U.S.C. § 12181(7)(G)). This category is qualified by the definition of "specified public transportation," which, as noted above excludes aircrafts. 42 U.S.C. § 12181(7)(G). Accordingly, *Lopez* held that this category "considered in conjunction with the aircraft exclusion, is most naturally read to exclude a facility in which surface or underground transportation is merely an auxiliary function and the facility is primarily devoted to air travel." *Lopez*, 662 F.3d at 599. Here, Morgan alleges disability discrimination occurred at Murtala Muhammed International Airport, which undoubtably is a "facility primarily devoted to air travel." *Id.* Therefore, there can be no liability under the ADA on this theory either, and VAA is entitled to judgment at law.

**C.  Service to Thomas**

The docket sheet does not reflect that Morgan ever served Thomas, who according to the complaint resides in England. (Compl. at 1.) Unlike Rule 4(m) of the Federal Rules of Civil Procedure, Rule 4(f), which governs service in a foreign country, and the Hague Convention, to which England

9

is a signatory, do not proscribe a time limit for service. *See* Fed R. Civ. P. 4(f); *see also Teligent, Inc. v. Banda 26, S.A. (*In re *Teligent, Inc.)*, Nos. 01-12974 (SMB), 03-3577, 2004 WL 724945, at *3 (Bankr. S.D.N.Y. Mar. 30, 2004); Status Table, Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, http://www.hcch.net/index_en.php?act=conventions.status&cid=17. Nevertheless, a court may dismiss a complaint for failure to serve a foreign defendant within a reasonable time. *See* In re *Teligent, Inc.*, 2004 WL 724945, at *3. Morgan commenced this action over a year ago, however, considering her *pro se* status, the court will allot her thirty (30) days from entry of this order to offer an explanation as to why she has not yet served Thomas.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that VAA's motion for summary judgment (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Morgan's complaint (Dkt. No. 1) against VAA is **DISMISSED**; and it is further

10

**ORDERED** that Morgan submit a response to the court's inquiry regarding service to defendant Emma Thomas within thirty (30) days from entry of this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 17, 2015
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge